0291

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Respondent, v. John W. LINDSAY, Chief Insurance Commissioner, the South Carolina Department of Insurance; and Irvin D. Parker, Consumer Advocate of South Carolina, Appellants.

(328 S. E. (2d) 80)

Court of Appeals

*L. Kennedy Boggs, Steven W. Hamm, Natalie J. Moore* and *Raymon E. Lark, Jr.,* Columbia, *for appellants.*

*Stephen G. Morrison* of *Nelson, Mullins, Grier & Scarborough,* Columbia, *for respondent.*

Heard March 29, 1984.

Decided Oct. 3, 1984.

GARDNER, Judge:

In this case, respondent State Farm Mutual Insurance Company (State Farm) seeks an 11.4 percent increase in its automobile insurance rates. The main issue in the case is whether prospective losses of the South Carolina Reinsurance Facility *must* be considered in establishing the increase in rates sought by State Farm. The South Carolina Insurance Commissioner (the Commissioner) found that prospective losses of the South Carolina Reinsurance Facility should not be included in the formula to be used in deciding whether State Farm is entitled to the 11.4 percent increase. State Farm appealed to the circuit court, which remanded the case to the Commissioner with instructions that the consideration of prospective losses of the South Carolina Reinsurance Facility be given in formulating the formula setting State Farm's rates. However, the appealed order held that after consideration of prospective losses of the Facility, these losses could be rejected as a factor of the formula for setting the rate (factor). The Commissioner and Consumer Advocate, who was allowed to intervene, appeal this order. We affirm in part and reverse in part.

The Reinsurance Facility was created pursuant to § 38-37-710 *et seq.* Under this act, insurers are required to issue policies to all applicants who have a valid driver's license and can afford to pay the premiums. Under the act, insurers may cede certain policies to the Facility (mainly those policies which they would not ordinarily write). When ceded, most of the premiums of the policy are also ceded to the Facility. Losses of the Facility are shared by the participating insurance companies according to their share of the market and utilization of the Facility.

This appeal addresses the role Facility losses should play in the Commissioner's determination of an appropriate rate for State Farm to charge its customers. There is no argument that Facility losses should not be calculated into the financial data in arriving at an appropriate rate; the argument is whether a factor for prospective losses must be given consid-·

eration for inclusion in the calculation. This is the pivotal issue of the case.

The Commissioner and Consumer Advocate first contend that consideration of a factor for prospective losses is not statutorily required in the rate making division.

The Commissioner found that consideration of a factor for prospective losses of the Facility should not be addressed in the computation of the rate sought by State Farm. In so doing, the Commissioner relied heavily on § 38-37-780, South Carolina Code of Laws, 1976, which provides that the Commissioner must, in setting rates, give consideration to the net gains or losses incurred by insurers as a result of participation in the Facility.

The Commissioner reasoned that nothing in § 38-37-780 is said about whether his consideration must be prospective or retrospective. Relying on § 38-37-780, he then made a finding of fact that prospective losses of the Facility should not be considered in the rate setting for State Farm because future losses of the Facility were conjectural and speculative. This he did in spite of the nonconjectural and nonspeculative fact that the Facility had experienced losses since its creation in 1974, and the palpable probability of the continuance of these losses. The Commissioner then held that a recoupment factor, along with a load element, should be programmed into the formula for the rate setting.

The Commissioner then ruled:

> The only other significant question of law raised during the hearing was whether treatment of Facility losses *must* be prospective, as urged by State Farm, or may be retrospective, as advocated by the Department. The basis for State Farm's contention is found in Code Section 38-43-430(1), wherein it is provided that in the making of casualty and motor vehicle insurance rates, due consideration shall be given to past and prospective loss experience. I cannot accept State Farm's assertion that the foregoing statute requires that Facility loss treatment be prospective. Code Section 38-37-780, which deals *specifically* (sic) with the consideration to be given losses incurred in the Reinsurance Facility, only says that consideration shall be given to gains or losses incurred as a result of participation in the Facility. Nothing in the

statute is said about whether such consideration *must* be prospective or retrospective. By contrast, Code Section 38-43-430(1), which was enacted almost thirty years prior to the creation of the Reinsurance Facility, is a general statute which deals not only with automobile insurance but with other lines of casualty insurance including fidelity insurance, surety and guaranty bonds, and workmen's compensation insurance. Moreover, as I have noted above, any attempt to predict what the experience for the entire insurance industry will be for any given time in the future is, in my judgment, speculative at best. (Emphasis ours.)

State Farm insists there is a clear implication in this ruling that § 38-43-430(1) is inapplicable to the rate setting State Farm seeks. We infer as much and will address it.

The trial judge ruled that the above finding of fact of the Commissioner was based upon an erroneous conclusion of law[1] because compliance with § 38-43-430(1) is mandatory. He held:

When setting the premium rate structure for automobile insurance, the Commissioner *must* comply with the requirements of S. C. Code Ann. § 38-43-430 (1976). This statute provides in part that due *consideration shall be given to past and prospective loss experience* within and outside the State, ... to past and prospective expenses, both countrywide and those specially applicable to this State, and to all other relevant factors within and outside the State.... (Emphasis added.)

We hold that the learned trial judge properly analyzed the situation and that this portion of the appealed order is correct for several reasons.

First, statutes *in pari materia* have to be construed together and reconciled, if possible, so as to render both operable. *Busby v. State Farm Mutual Auto Ins. Co.,* 280 S. C. 330, 312 S. E. (2d) 716 (S. C. App. 1984). The statutes are *in pari materia.* The common purpose of both

---

[1] Appellants argue that the finding of fact of the Commissioner is beyond the scope of review of the trial judge. Appellants overlook the clear holding of the trial judge that his order is based upon an error of law for this reason we hold this question not necessary for decision.

statutes has to do with rate making. The purpose of § 38-37-780 is to provide that in rate setting Facility gains and losses may be considered. This is not inconsonant with § 38-43-40 which is the general statute dealing with rate setting which provides, *inter alia*, that a factor for prospective loss experience must be given consideration. Section 38-37-780 provides simply that the gains and losses of the Facility ought to be taken into consideration in rate setting and § 38-43-430 provides that a factor for prospective losses must also be considered in rate setting. Here the writer finds no inconsonance; the latter statute simply complements the former. The two statutes, considered in tandem, constitute a harmonious and desirable procedure for rate setting by the Commissioner. The statutes are not inconsonant as the Commissioner indicated; to the contrary, they are harmonious and complementary, and we so hold.

Moreover, the Commissioner's ruling, in the writer's ▮▮ mind, does violence to the very basis of the insurance business. The insurance industry cannot be expected to insure losses after they have already occurred; this would be antithetical to the self-evident principle of insurance that a loss is not insured after it has already occurred. Instead, a risk is insured before a loss occurs. The price for insuring the risk is the premium charged in anticipation of the losses that will take place after the policy is issued. An adequate premium is one that is sufficient to meet the anticipated losses. This is what rate setting is all about. The entire procedure of rate making contemplates a looking into the future, and an attempt to predict the future. The very purpose of the rate making process is to insure that premiums are adequate to cover anticipated (prospective) losses and anticipated expenses so that a reasonable profit might be allowed the insurance company for its business operation, except, of course, the Facility business, which by statute must be nonprofitable. *The State of North Carolina, et al. v. North Carolina Reinsurance Facility*, 302 N. C. 274, 275 S. E. (2d) 399 (1981).

The Commissioner next contends that the appealed order requires the inclusion of a profit factor for prospective Facility business and that this is contra to § 38-37-710 which provides that the Reinsurance Facility be a nonprofit legal entity. We agree.

The appealed order contains the following language:

... However, the departmental formula in effect fails to consider a reasonable underwriting profit for Petitioner as mandated by section 38-43-430.

... In the event, upon remand, the Commissioner concludes that it is impossible, by any measure, to treat reinsurance facility losses prospectively, he is hereby ordered to give full consideration, in any recoupment formula adopted, to ... the financial needs of Petitioner with respect to growth, and to reasonable underwriting profits on their book of business.

Although the above ruling might be interpreted to mean that a reasonable underwriting profit for the book of business of State Farm does not include the book of business of the Facility, we think the position of the Commissioner and Consumer Advocate as to this question is tenable. There is not doubt that the legislature intended the Facility business to be nonprofitable. This, however, is not inconsonant with the proposition that, in the insurance world, insurance is written and premiums collected to cover losses that might occur in the future and not for losses which have already occurred.

For the reasons given, the appealed order is reversed insofar as it might be construed as to require the Commissioner to include a factor for a reasonable underwriting profit on Facility business; in all other respects the appealed order is affirmed.

Affirmed in part and reversed in part.

SANDERS, C. J., and CURETON, J., concur.